UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

COGENT SOLUTIONS GROUP, LLC,

      Plaintiff,

                            Case No. 2:12-CV-665
   v.                     JUDGE EDMUND A. SARGUS, JR.
                            MAGISTRATE JUDGE ELIZABETH P. DEAVERS

KAREN E. BROWN,

      Defendant.

## OPINION AND ORDER

This matter is before the Court for consideration of several pending motions. For the reasons below, Plaintiff Cogent Solutions Group, LLC's motion to dismiss its complaint without prejudice is **GRANTED** in accordance with this Opinion and Order. Doc. 25. Defendant Dr. Karen E. Brown's motion to dismiss this case with prejudice is thus **DENIED**. Doc. 26 at 9. The parties' motions for sanctions are also **DENIED**. Doc. 27 (Dr. Brown); doc. 29 (Cogent). Finally, the following motions are **DENIED AS MOOT**—Dr. Brown's motion to amend her answer, doc. 18; Dr. Brown's motion for leave to file a sur-reply, doc. 24; and Cogent's motion to stay the litigation in this case during the pendency of its motion to dismiss, doc. 25 at 5.

## I. BACKGROUND

### A. General Factual Background

According to its complaint, Plaintiff Cogent Solutions Group, LLC ("Cogent") deals in the dietary-supplement business. Doc. 3 ¶ 6. It does so from Kentucky, *id.* ¶ 2, and it focuses on "researching, developing, manufacturing, marketing, and selling dietary supplement formulations containing hyaluronan ('HA') for both animal and human consumption," *id.* ¶ 6. The term "HA" refers to a polymer that occurs naturally in the human body. *Id.* ¶ 7. Skin and connective tissue,

1

in particular, have high concentrations of HA. *Id.* HA breaks down naturally in humans as a result of aging, as well as a result of conditions like osteoarthritis. *See id.* ¶ 8. The breakdown of HA leads to painful joints and wrinkled skin. *See id.* Cogent alleges that it has developed and now sells a dietary supplement for humans under the federally trademarked name of Baxyl. *See* doc. 3 ¶¶ 9–10. Baxyl, according to Cogent's complaint, contains HA. *Id.* ¶ 9. Cogent asserts that its Baxyl product occupies the largest market share of similar dietary supplements. *Id.* ¶ 26.

According to her answer, Defendant Karen E. Brown ("Dr. Brown") "has been a laboratory scientist for about 40 years." Doc. 4 ¶ 22, at 9. During her time as a scientist she "has conducted or managed research and development projects that registered 44 new drug, pharmaceutical, vaccine or diagnostic products or technologies." *Id.* Dr. Brown also avers that a significant part of her experience has entailed work with HA. She has been "working specifically with the HA molecule for 31 years," and, of her 27 patents, "10 specifically relate[] to HA." *Id.* Several of these patents, for example, relate to something called "microbial fermentation," a method of "synthetically creat[ing] HA without requiring bovine or chicken tissue." *Id.*

Dr. Brown has also applied her HA-related experience to the dietary-supplement business. Cogent alleges that Dr. Brown is "affiliated with Hyalogic, LLC ['Hyalogic']," one of its competitors. Doc. 3 ¶ 12. Dr. Brown answers that "she provides consultant services for Hyalogic." Doc. 4 ¶ 12, at 6.

Dr. Brown's experience with HA and Dr. Brown's relationship to Hyalogic are central to this lawsuit. According to Cogent, all came together in a speech Dr. Brown gave in Columbus, Ohio. Specifically, Cogent alleges—and Dr. Brown admits, *see* doc. 4 ¶ 13—that Dr. Brown gave an address (the "Address") at the Natural Products Association Midwest Trade Show in

Columbus on July 30, 2011. Hyalogic sponsored the Address. Doc. 4 ¶ 12, at 6. The particular part of the Address at issue in this case relates to two of the ingredients found in Cogent's Baxyl product, namely citric acid and potassium sorbate. Doc. 3 ¶ 25. Cogent contends that Baxyl contains "trace amounts" of these "FDA-approved, naturally-occurring preservative compounds to protect its users from potentially harmful bacteria growth." *Id.* According to Cogent's complaint, Dr. Brown in her Address told the audience that she had performed research in her home demonstrating that citric acid and potassium sorbate break down HA. *See id.* ¶¶ 17–22.

In Cogent's estimation, Dr. Brown's HA-related references harmed Baxyl's brand. Specifically, Cogent alleges that Dr. Brown's Address implied, and even stated outright, that citric acid and potassium sorbate render HA ineffective. *See id.* ¶ 17. Although Dr. Brown "also addressed how other preservatives allegedly degrade HA," *id.* ¶ 25, Cogent alleges Dr. Brown directed her statements at Baxyl in an effort to promote a similar Hyalogic product called "Synthovial Seven":

> [H]er focus on the alleged degrading effect of citric acid and potassium sorbate was intentional and was calculated to draw a "scientific" distinction, for competitive purposes, between CSG's BAXYL® dietary supplement, which contains trace amounts of those FDA-approved, naturally-occurring preservative compounds to protect its users from potentially harmful bacteria growth, and Hyalogic's product, Synthovial Seven, which does not list any such preservative on its packaging.

*Id.*

Cogent further contests the veracity of Dr. Brown's assertions in the Address. Specifically, Cogent argues that Dr. Brown's statements as to HA's degradation lack support from a "published, peer-reviewed scientific study," doc. 3 ¶ 23; that Dr. Brown "told the audience that she had performed the 'research' underlying her 'findings' in her own home and at her own expense," *id.* ¶ 23; and that her conclusions are false, *id.* ¶ 24; *see also id.* ¶¶ 27, 29.

3

Based on Dr. Brown's Address, Cogent brought claims for common law defamation and tortious interference with business relationships. Cogent brought its complaint in July of 2012 in the Franklin County, Ohio Court of Common Pleas. *See* doc. 1 at 1; doc. 3 at 1. Dr. Brown then removed to this Court on the basis of diversity jurisdiction, doc. 1 at 1, and subsequently filed an answer to the complaint, doc. 4.

**B. The Kentucky Lawsuit**

This is not the first case that has dealt in part with Dr. Brown's Address. The parties rely on the circumstances of another, related case to support several of their motions. As background, the same Cogent in this case filed an action against Hyalogic, LLC—the same competitor for whom Dr. Brown consults—in the Eastern District of Kentucky (the "Kentucky Lawsuit"). The Kentucky Lawsuit also related to Cogent's Baxyl product:

> Cogent Solutions Group, LLC ("CSG") and Hyalogic, LLC are competitors in the joint supplement market, with hyaluronic acid ("HA") being a key component in their respective products. In April 2011, CSG commenced suit against Hyalogic and Hoppy & Company, Inc. requesting the defedants to cease the dissemination of misleading information about CSG's product Baxyl, primarily focusing on the defendants' use of a "Competitive Analysis Chart" comparing the two competing products. On April 21, 2011, the parties entered into a Stipulated Agreement (R. 19, attach.1) informing the court of their intent to mediate in good faith, and the defendants agreed to "remove all copies of 'the Chart' from circulation, and all copies, whether paper or electronic, shall be retained by counsel."

*Cogent Solutions Group, LLC v. Hyalogic (Cogent I), LLC*, No. 11-124-JBC, 2012 WL 1083513, at *1 (E.D. Ky. March 30, 2012).

Although the parties settled, Cogent later filed a motion to enforce the settlement agreement. *Id.* It did so based in part on the same speech at issue in this case—"a speech given by Dr. Karen Brown on July 30, 2011, at the National Products Association Midwest Trade Show." *Id.* The district court denied Cogent's motion, in part because it did not construe current

4

Defendant Dr. Brown's use of the word "competitors" "as a direct reference to Baxyl." *Id.* at *5; *see also id.* ("[I]t is not clear that Dr. Brown is referring to CSG or Baxyl because she never does so."). Cogent appealed to the Sixth Circuit, but to no avail. *See Cogent Solutions Group, LLC v. Hyalogic, LLC* (*Cogent II*), 712 F.3d 305, 311 (6th Cir. 2013) (dismissing Cogent's argument that "Dr. Brown's statements about the effects of citric acid and potassium sorbate on HA, unconnected to any products, should be interpreted as referring to Baxyl"). While pending on appeal, Cogent filed the instant action against Dr. Brown.

## C. The Discovery Disputes

The parties have engaged in additional disputes beyond the one underlying this case. They stem from discovery, and they merit their own background given their relation to Planitiff's motion to dismiss, as well as the parties' motion for sanctions.

One of the disputes has to do with Dr. Brown's request for a protective order during the course of discovery. As background, Cogent served discovery requests to Dr. Brown on November 16, 2012. Doc. 26-2 at 2. These requests included 117 requests for admission, *see* doc. 26-2 at 15–29, well beyond the normal of 40 allowed by local rule, S.D. Ohio. Civ. R. 36.1. Dr. Brown only answered the first 40 requests for admission, which prompted Cogent to move for leave to serve the additional 77 requests. Doc. 10. The Magistrate Judge denied this request. *See* doc. 15 at 5 ("A review of Cogent's proposed requests for admission demonstrates that they are primarily crafted for purposes of discovery rather than, for example, to eliminate the necessity of proving facts that are not in substantial dispute. A number of the requests also seek admission of legal conclusions." (footnotes omitted)).

The parties also battled over the need for and language of a protective order. According to Dr. Brown, the facts of the dispute called for a protective order—particularly, in her argument,

given the nature of the information each side sought during discovery (for example, research information and data), and the nature of the relationship between the parties (Cogent as a competitor of the company for whom Dr. Brown consults). The parties could not agree on the language of a protective order, which led to a conference with the Magistrate Judge. At the heart of the protective-order battle was Cogent's insistence on language that would "serve as a benchmark as to how and under what circumstances the parties may designate materials exchanged during discovery as confidential." Doc. 16 at 1. The Magistrate Judge, however, denied Cogent's request to compel inclusion of its proposed language. She found "that including the language . . . [would] unduly restrict[] the discovery process." *Id.* at 2. The Magistrate Judge issued this discovery Order on April 17, 2013; Dr. Brown then produced documents pursuant to the Order on July 17, 2013, *see* doc. 25-1 at 2.

Finally, the parties both accuse each other of intentionally delaying the pace of litigation in this case. As for the facts, Dr. Brown served discovery requests on January 30, 2013, to which Cogent responded on April 19, 2013, doc. 26-4 at 2. Like Dr. Brown's responses to requests, Cogent responded to Dr. Brown's discovery requests by objecting to many of them. *See* doc. 26-4 at 4–34. Cogent also produced two journal articles and two patents. *See* doc. 26-1 ¶ 5; doc. 26-4. A month-and-a-half later, Cogent supplemented its responses by "produc[ing] a bottle of expired Baxyl." Doc. 26 at 3; *see also* doc. 26-1 ¶ 5. Dr. Brown then served Cogent with requests for admission on June 28, 2013, to which Cogent did not respond before moving to dismiss its complaint on July 30, 2013. *See* doc. 26-1 ¶ 7.

## D. The Motions *Sub Judice*

With the above as background, several motions remain pending. First, Dr. Brown moved to amend her original answer to assert issue preclusion and claim preclusion as affirmative

defenses. Doc. 18 at 1. Cogent opposes this motion, and the parties' briefing led Cogent to move for leave to file a sur-reply on the matter. Doc. 24. Four days after its motion for leave to file a sur-reply, Cogent moved to dismiss its complaint without prejudice. Doc. 25. Dr. Brown has responded in part by asking the Court to dismiss this case with prejudice. Doc. 26 at 9. Both parties also moved for sanctions based in large part on their discovery disputes. *See* doc. 27 (Dr. Brown's motion for sanctions); doc. 29 (Cogent's cross-motion for sanctions). Dr. Brown has also moved for sanctions against Cogent and its attorneys for, in her argument, "unreasonably and vexatiously filing and maintaining this baseless lawsuit." Doc. 27 at 1.

## II. COGENT'S MOTION TO DISMISS

Cogent moves to dismiss this action without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). If the Court grants Cogent's motion to dismiss without prejudice, Dr. Brown argues that she is entitled to attorneys' fees and the costs expended in defending this case. *Id.* The Court deals first with the merits of dismissal under 41(a)(2).

### A. Dismissal Under Rule 41(a)(2)

Rule 41(a)(2) provides plaintiffs an avenue to dismiss their own cases. Notwithstanding a few caveats not at issue here, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2) And "[u]nless the [court's] order states otherwise, a dismissal under this paragraph . . . is without prejudice." *Id.* This Rule exists primarily to protect the interests of the defendant, but courts should consider the equities of dismissal as applied to all parties. *See* James Wm. Moore et al., 8 *Moore's Federal Practice* § 41.40[5][A] (3rd ed. 2011). Whether to grant a plaintiff's request under Rule 41(a)(2) falls under the "sound discretion of the district court." *Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994). District courts properly deny a dismissal without prejudice where

the "defendant will suffer 'plain legal prejudice.'" *Rivera v. DePuy Orthopaedics, Inc.*, No. 3:10 DP 20060, 2011 WL 4368981, at *2–3 (N.D. Ohio Sept. 19, 2011) (citing *Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212, 217 (1947), and *Grover*, 33 F.3d at 718).

The following factors guide the "plain legal prejudice" assessment: (1) the defendant's effort and expense in preparing for trial; (2) excessive delay or lack of diligence by the plaintiff in prosecuting the action; (3) insufficiencies in the plaintiff's explanation of the need for a dismissal; and (4) whether a motion for summary judgment is pending. *See Bridgeport Music, Inc. v. Universal-MCA Music Publ'g, Inc.*, 583 F.3d 948, 953 (6th Cir. 2009). The fourth factor does not apply to this case—Dr. Brown did not move for summary judgment—and thus counts in Cogent's favor. The Court now turns to each of the remaining factors.

### 1. Dr. Brown's Effort and Expense in Preparing for Trial

Cogent argues that Dr. Brown "could not have extended much effort and expense in preparing for trial[:] Trial is not scheduled until January 27, 2014, [and] . . . [n]o pretrial motions have been filed by any party." Doc. 25 at 4. Cogent also focuses on the words "for trial." That is, in Cogent's view, "This case is not one of dismissal on the eve of trial, where a defendant has had to incur significant trial preparation expenses, expert fees, and costs for trial materials. Instead, this case involves a dismissal during discovery—prior to depositions." Doc. 28 at 11.

Dr. Brown disagrees. She points to the fact that Cogent filed its motion to dismiss the day before the discovery cut-off in this case, doc. 26 at 5; *see also* doc. 8 (preliminary pretrial order); that she had thus "expended many resources in the discovery phase" given this late notice, doc. 26 at 5; that she and her counsel had prepared, for example, for a deposition set for the day after Cogent moved to dismiss this case; and that she had already traveled from Minnesota to Columbus to prepare for her deposition the next day.

Although close, the first factor ticks in favor of Cogent. Cogent moved to dismiss this case well before trial and almost exactly one year after it began. This differs from cases in this circuit where dismissal has been denied. *See, e.g.*, *Leon v. City of Columbus*, No. 2:09-CV-329, 2012 WL 639506, at *1–2 (S.D. Ohio Feb. 28, 2012) (denying dismissal without prejudice where—unlike here—the plaintiff initiated the case three years prior, and where—unlike here— "the Court ha[d] generously granted Plaintiff[']s numerous extensions and even stayed th[e] action to allow for further development of the[] case"). Also, Dr. Brown has no doubt expended effort in discovery in this case, and in filing several motions. Still, this alone does not mandate denying dismissal without prejudice. *See Kehoe Component Sales Inc. v. Best Lighting Products, Inc.*, 933 F. Supp. 2d 974, 992–93 (S.D. Ohio 2013) (granting dismissal without prejudice even though the plaintiff moved to do so after the cut-off date for discovery, and even though the defendant had "incurred defense costs relating to Plaintiffs' claims"); *Luckey v. Butler Cnty.*, No. 1:05CV388, 2006 WL 91592, at *3 (S.D. Ohio Jan. 13, 2006) (granting dismissal without prejudice even though the defendant had filed a dispositive motion). A final point "cuts against a finding of plain legal prejudice"—"it appears that much of the effort and expense devoted to this case would be useful in a subsequently filed action." *Wills v. Honda of Am. Mfg., Inc.*, No. 2:11-CV-717, 2012 WL 1203567, at *2 (S.D. Ohio April 10, 2012) (citing *Rosenthal v. Bridgetsone/Firestone, Inc.*, 217 F. App'x 498, 502 (6th Cir. 2007)).

### 2. Excessive Delay or Lack of Diligence by the Cogent

The parties focus much of their energy on this factor. For its part, Cogent argues that it did not cause any excessive delay, and that it did not exhibit any lack of diligence. As an example, it points to its initial discovery request in November of 2012; and it cites an e-mail that, in its argument, demonstrates its efforts to advance this case and seek yet-to-be discovered

documents through May of 2013, *see* doc. 25-5. More, Cogent attributes any delay in litigation to Dr. Brown's failure to provide documents during discovery, Dr. Brown's requests for admission, and Dr. Brown's reliance on the need for a protective order. *See* doc. 28 at 7–8.

In response, Dr. Brown asserts that "Cogent's pattern in this case was to persistently demand discovery from [Dr. Brown] while at the same time thwarting any discovery efforts by her." Doc. 26 at 5. For support of what Dr. Brown calls "a pattern of delay and lack of diligence," *id.* at 6, she provides a number of examples: (1) Cogent responded to Dr. Brown's discovery requests by objecting to many of them, and by "producing merely two journal articles and two patents," *id.* at 3; *see also* doc. 26-1 ¶ 5; doc. 26-4; (2) a month-and-a-half later, Cogent supplemented its responses by "produc[ing] a bottle of expired Baxyl," doc. 26 at 3; (3) Dr. Brown served Cogent with requests for admission on June 28, 2013, to which Cogent did not respond before moving to dismiss its complaint on July 30, 2013; (4) the parties' protective-order dispute, *see* doc. 16 at 2; (5) Cogent served requests for admission beyond the number allowed by local rules, and then moved for leave to do so after service, *see* doc. 15 at 4–5; (6) Cogent did not respond to Dr. Brown counsel's meet-and-confer letter; and, (7) according to Dr. Brown, Cogent's unwillingness to engage in earnest settlement discussions, *see* doc. 26 at 4.

This factor also falls in Cogent's favor. As a general matter, the record shows both parties blameworthy on this point. Both parties, for example, replied with a significant number of objections to the respective opposing party's request for admission. *See generally* doc. 26-3 (Dr. Brown's responses to Cogent's first set of interrogatories and requests for production); doc. 26-4 (Cogent's responses to Dr. Brown's first set of interrogatories and requests for production). Further, neither party produced a great deal in response to the other party's request during discovery. *See* doc. 26-3; doc. 26-4. This all seems primarily connected to both parties' concern

about protecting during discovery what they deemed as possible trade secrets. *See* doc. 19 at 1. And although Cogent did indeed lose on the parties' protective-order dispute, *see* doc. 15, nothing in the record demonstrates that Cogent made its arguments with delay in mind, nor did the Magistrate Judge find as much, *see id.* Finally, none of the allegations nor anything in the record rises to the level of delay sufficient to warrant denial of a dismissal without prejudice.

### 3. Explanation of the Need for a Dismissal

Cogent puts forth several explanations for its dismissal. They include: (1) it learned that Hyalogic, its competitor with whom Dr. Brown consults, sought to send its counsel to Dr. Brown's deposition; (2) it learned that Hyalogic uses citric acid as the most abundant ingredient in one of its products; (3) finally, Cogent explains that it "had the opportunity to review Dr. Brown's discovery documents," which led the company to conclude that the risk of divulging "trade secret, proprietary, and confidential information . . . to a competitor outweighs the benefits it sought to receive in this case," doc. 25 at 5.

Dr. Brown argues that none of these reasons adequately explains the need for dismissal, and the Court agrees. As for its first explanation, Cogent should not have been surprised by the possible presence of Hyalogic's counsel at Dr. Brown's deposition—as discussed at the outset, both parties have acknowledged another case in this circuit between Cogent and Hyalogic with facts and issues similar to the instant case. *See Cogent II*, 712 F.3d 305 (6th Cir. 2013); *Cogent I*, No. 11-124-JBC, 2012 WL 1083513 (E.D. Ky. March 30, 2012). Further, several of Cogent's requests for admission ask for information about Hyalogic and its products, *see* doc. 10-1 at 18–51, and Dr. Brown also consults with Hyalogic on its products; Hyalogic's counsel thus should have been aware—and taken an interest in—Dr. Brown's deposition. Even if Cogent were in

11

fact surprised by the potential presence of Hyalogic's counsel, Cogent failed to offer any explanation of why this would lead to dismissal of the suit.

Cogent's other two explanations fare no better. As for its second, the company fails to make clear why the presence of citric acid in one of its competitor's products would affect a defamation claim against Dr. Brown. Even if this connection were made clear, Cogent should have been able to account for this information before bringing suit. Whether Hyalogic's products might also contain citric acid, that is, would have been information available without litigation, if not by publicly available means.

Much of the same can be said for Cogent's third reason, that it came to "conclude that the risk of divulging "trade secret, proprietary, and confidential information . . . to a competitor outweighs the benefits it sought to receive in this case." Doc. 25 at 5. Cogent fails to explain why it did not realize before bringing suit that questions surrounding the make-up of its products might come up during discovery. After all, it initiated this case based on something Dr. Brown purportedly said about the compositional make-up of one of its products. Cogent also fails to explain how viewing Dr. Brown's discovery documents led it to this conclusion. In short, Cogent fails to provide a clear explanation for its motion to dismiss.

### 4. An Additional Consideration

Cogent's inability to provide a clear explanation for the dismissal leads to an additional factor for consideration. According to the Sixth Circuit, "it is unfair to subject [a defendant] to continued exposure to potential liability by dismissing the case without prejudice" when "the law clearly dictates a result for the defendant." *Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716, 719 (6th Cir. 1994); *see also Rosenthal*, 217 F. App'x at 500 (quoting *Grover*, 33 F.3d at 719). In this case, Dr. Brown has moved to amend her original response. She does so specifically to

assert the affirmative defenses of issue preclusion and claim preclusion. Doc. 18 at 1. Therein lies the connection to the *Grover* question—whether, in this case, Dr. Brown's proposed issue- and claim-preclusion defenses "clearly dictate[]" a result in her favor.

*Grover* does not help Dr. Brown in this case. Even if her proposed defenses did clearly dictate a result in her favor, nothing would prevent Dr. Brown from asserting them in a subsequently filed action. This, then, differs from *Grover* and the cases *Grover* cites, where the "clearly dictated" factor applied. *See Grover*, 33 F.3d 7at 717–19 (reversing the district court when it granted voluntary dismissal—despite the Ohio Supreme Court answering the district court's certified question in a manner that should have determined the case in the Dr. Brown's favor, and despite the defendant's pending motion for summary judgment); *Phillips v. Illinois Cent. Gulf R.R.*, 874 F.2d 984, 987 (5th Cir. 1989) (holding that dismissal would result in clear legal prejudice because the defendant "would be stripped of an absolute defense" in a subsequent suit, namely statute of limitations); *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 970 (8th Cir. 1984) ("If defendant has already won its case, reimbursement of fees and expenses cannot make it whole from the injury of being sued again, perhaps this time to lose.").

### 5. Conclusion

The Court acknowledges that the issue here is close. On one hand, as explained, the insufficiency of Cogent's explanations for dismissal gives the Court pause. Again, Cogent has failed to offer an adequate or logical explanation for the need to dismiss its case.

Even so, the balance of the above factors leans in Cogent's favor. While important, the explanation-for-dismissal factor does not control the analysis of a motion to dismiss under Rule 41(a)(2). *See Ferron v. 411 Web Directory*, No. 2:09-CV-153, 2010 WL 2998607, at *2 (S.D. Ohio July 28, 2010) ("The factors are more of a guide and discretion ultimately rests with the

trial court." (citing *Tyco Labs., Inc. v. Koppers Co.*, 627 F.2d 54, 56 (7th Cir. 1980))). To this end, the other three factors point—in Cogent's favor—toward dismissal without prejudice. Dr. Brown has not filed a motion for summary judgment in this case. The record also indicates that both parties were complicit with any delay in litigation (through the parties' dispute regarding a protective order, and their mutual feet dragging with respect to scheduling and disclosure). Finally, while Dr. Brown had expended effort and resources up until Cogent's motion for dismissal, she had not done so to an extent that warrants denying Cogent's motion. For these reasons, Cogent's motion to dismiss this case without prejudice is granted.

### III. CONDITIONS OF DISMISSAL

Rule 41(a)(2) allows the Court to dismiss this case "on terms that [it] deems proper." Dr. Brown asserts that she "should be entitled to her attorneys' fees and costs" as a condition of dismissal. Doc. 26 at 9. She advances three lines of argument in support. She bases one on the factors established by case law related to Rule 41(a)(2). She puts forth the other two in a separate motion, arguing that this Court should sanction Cogent and its counsel—pursuant either to 28 U.S.C. § 1927, or to its inherent powers to levy sanctions. The Court considers each argument in turn.

### A. Rule 41(a)(2)

Rule 41(a)(2) allows for the "the payment of costs incurred by a defendant" as a condition of dismissal without prejudice. *Bridgeport Music, Inc. v. Universal–MCA Music Publ'g, Inc.*, 583 F.3d 948, 954 (6th Cir. 2009). The award of costs and attorney fees for a Rule 41(a)(2) dismissal is discretionary. *DWG Corp. v. Granada Invs., Inc.*, 962 F.2d 1201, 1202 (6th Cir. 1992). Although common as a condition of dismissal, *see Spar Gas, Inc. v. AP Propane, Inc.*, 972 F.2d 348, No. 91-6040, 1992 WL 172129, at *3 (6th Cir. July 22, 1992), "Rule

41(a)(2) . . . is not a fee-shifting statute" that guarantees an automatic award of attorneys' fees,

*Bridgeport Music, Inc. v. Universal-MCA Music Publ'g, Inc.*, 481 F.3d 926, 931 (6th Cir. 2007).

To this end, several factors guide whether attorneys' fees or costs should be imposed as

conditions of dismissal:

> (1) whether the plaintiff acted in good faith in bringing and prosecuting the
> litigation (2) whether the defendant incurred substantial expenses in defending
> the action, including as a result of the advanced stage of the proceedings or the
> nature of the litigation; (3) whether the plaintiff delayed in bringing the motion
> to dismiss; and (4) whether the work performed can be used in a subsequently
> filed action.

*Dowling v. Select Portfolio Servicing, Inc.*, No. 05-CV-00049, 2007 WL 2815567, at *4 (S.D.

Ohio Sept. 25 2007) (citations omitted); *see also United States v. 2007 BMW 335i Convertible,*

*VIN:WBAWL73547PX47374*, 648 F. Supp. 2d 944, 954 (N.D. Ohio 2009).

Three of the factors do not support conditioning dismissal upon Cogent compensating Dr.

Brown for costs and attorneys' fees. On the second factor, to the extent Dr. Brown has "incurred

substantial expenses in defending this action," Dr. Brown gives the Court no indication that her

work "could not be used in subsequent litigation on the same claims." *Spar Gas,*1992 WL

172129, at *2. As to the third factor, Dr. Brown does not directly argue that Cogent delayed in

bringing the motion to dismiss. Even if she did, nothing in the record demonstrates that Cogent

intentionally delayed in moving to dismiss. As for the fourth factor, again, the work Dr. Brown

has performed thus far can indeed be used in a subsequently filed action—Dr. Brown presents no

argument to the contrary.

The first factor remains and it does give the Court pause. The pause comes not from the

parties' discovery disputes, but from Cogent's Kentucky Lawsuit. *See Cogent II*, 712 F.3d 305

(6th Cir. 2013); *Cogent I*, No. 11-124-JBC, 2012 WL 1083513 (E.D. Ky. March 30, 2012). Dr.

Brown views Cogent's efforts in this case as an impermissible attempt to re-litigate the issues it

brought in the Kentucky Lawsuit. Even so, several points counsel against finding bad faith. Dr. Brown does not point to anything in the record to support the conclusion that Cogent brought this suit in bad faith. Despite the fact that Cogent filed this suit subsequent to the Kentucky Lawsuit, "there is no indication that [its] suit was not a bona fide effort to seek redress for the alleged wrongs it perceived it suffered at [Dr. Brown's] hands." *Ferron v. 411 Web Directory*, No. 2:09-CV-153, 2010 WL 2998607, at *5 (S.D. Ohio July 28, 2010). And "[t]here is nothing in the record to indicate that [Cogent] filed its [claim] to harass, embarrass, or abuse [Dr. Brown]. Nor is there evidence to suggest that [Cogent] deliberately sought to increase [Dr. Brown's] costs by extending the litigation." *Id.* In short, the relevant factors under 41(a)(2) do not support conditioning dismissal on an award of attorneys' fees and costs.

## B. Sanctions via 28 U.S.C. § 1927 or the Court's Inherent Powers

Dr. Brown also moves for attorneys' fees under two additional avenues. The first is 28 U.S.C. § 1927. It reads:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

A party seeking sanctions under section 1927 can show unreasonable and vexatious conduct in a number of ways. As one, the Sixth Circuit "construe[s] 'vexatiously multiplying proceedings' to include conduct where 'an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of non-frivolous claims.'" *Shepherd v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2002) (quoting *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986)). As another, sanctions "are appropriate where an attorney has engaged in some sort of conduct that, from an objective standpoint, falls

16

short of the obligations owed by the member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Id.* (internal quotation marks omitted) (citing *Holmes v. City of Massillon*, 78 F.3d 1041, 1049 (6th Cir.1996)).

The Court also has discretion to award attorneys' fees based on its inherent powers. Similar to doing so under section 1927, "a district court may award sanctions pursuant to its inherent powers when bad faith occurs." *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 375 (6th Cir. 1996). In order for the Court to award sanctions under this avenue, it must find "[1] that 'the claims advanced were meritless, [2] that counsel knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose such as harassment." *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011).

Dr. Brown puts forth several examples of conduct worthy, in her estimation, of sanctions under either section 1927 or the Court's inherent powers. The Court walks through each in turn.

### 1. Re-Litigation

Dr. Brown first argues that Cogent "improperly re-litigated" a claim for defamation "after losing on this same issue in the Kentucky Lawsuit." Doc. 27 at 9. She argues that this "can only be explained as an intentional abuse of the judicial process." *Id.* Dr. Brown's claim here amounts to one that Cogent "vexatiously pursue[d] unmeritorious claims." Doc. 27 at 10.

Cogent's conduct under this line of argument does not rise to a level worthy of sanctions. First, Cogent indeed filed a related action in the Kentucky Lawsuit, but the company did not lose on the merits in that case. The parties settled, and Cogent lost on a subsequent motion related to the settlement agreement. Even if the district court's and the Sixth Circuit's holdings informed the merits of the instant action, Cogent filing one related suit in another district does not meet the high bar necessary for litigation—and re-litigation—to be deemed "vexatious." *See, e.g., Maloof*

*v. Level Propane Gasses, Inc.*, 316 F. App'x 373, 377 (6th Cir. 2008) ("Maloof's Renewed Motion represented his third attempt to get an examiner appointed to address his allegations . . . . However, rather than raise new legal arguments or present new evidence that might have justified an expectation of a different ruling, Maloof simply alleged the same claims and relied upon the same evidence that the bankruptcy court had already found to be unavailing.").

Second, the cases Dr. Brown cites are distinguishable from the facts of this case. One is *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642 (6th Cir. 2006), where the Southern District of Ohio enjoined counsel from proceeding in the Central District of California in a related case. *Id.* at 643–44. Counsel in *Red Carpet* ignored the Court's order, and the Sixth Circuit upheld sanctions against him for his "continuous attempts to circumvent the district court's injunction by prosecuting the California case[, which] literally and unnecessarily multiplied the proceedings." *Id.* at 646. In this case, while Cogent's counsel attempted to litigate issues similar to those related to a settlement agreement in another district, he did not do so multiple times (as was the case in *Red Carpet*, 465 F.3d at 644), nor did he do so in violation of an injunction. Cogent's and its counsel's conduct also differs in several ways from another case Dr. Brown cites in support, *Simpson v. Columbus South. Power Co.*, No. C2-02-1080, 2003 WL 21799897 (S.D. Ohio July 15, 2003). Unlike that case, this is not "the sixth court to consider this matter," and Cogent has not "been told repeatedly that [its] claims are settled and barred by *res judicata*." *Columbus South. Power*, 2003 WL 21799897, at *5.

Third, Dr. Brown's counterargument fails to convince. To be sure, as Dr. Brown argues, Cogent's counsel "engaged in forum-shopping and pursued a second action concerning Dr. Brown's allegedly defamatory statements . . . despite receiving an adverse judgment in the Kentucky Lawsuit." Doc. 27 at 10–11. But, again, the adverse judgment came on a matter of

contract (interpreting the settlement agreement, *see Cogent I*, No. 11-124-JBC, 2012 WL 1083513, at \*1 (E.D. Ky. March 30, 2012)), and against a different, albeit related, party (Hyalogic, *see id.*). Opposing counsel's choice to re-file this case might have been unwise or unnecessary. Even if the choice could be called something—negligent, for example—sanctions of the sort Dr. Brown seeks for the re-litigation claim require "something more than negligence or incompetence." *Red Carpet*, 465 F.3d at 646. Dr. Brown's re-litigation argument thus fails.

### 2. Cogent Counsel's Conduct During Discovery

Dr. Brown next points to opposing counsel's conduct during discovery as sanctionable. Dr. Brown specifically alleges that Cogent failed to disclose or otherwise produce an affidavit of one of Cogent's own employees. Dr. Brown frames this as a material omission given "the Sixth Circuit's conclusion that Hyalogic, through Dr. Brown's statements, did not breach the settlement agreement between Cogent and Hyalogic," and that this conclusion "turned on [the] affidavit." Doc. 27 at 10. For its part, the Sixth Circuit discussed the affidavit in the following terms:

> In its opinion the district court made reference to Dr. Brown referring to "competitors" at the Speech. However, it appears from the affidavit of an employee provided by Cogent that the "competitors" phrase was used in a video and not by Dr. Brown. Dr. Brown appears to have made no reference to "competitors," "Baxyl," or "others."

*Cogent II*, 712 F.3d 305, 309 n.3 (6th Cir. 2013).

The Court declines to levy sanctions for the alleged failure to disclose. To be sure, a failure to disclose can result in sanctions beyond those normally available for a discovery violation under Rule 37. *See, e.g.*, *In re Downs*, 103 F.3d 472, 475 (6th Cir. 1996). But this situation does not call for sanctions. Dr. Brown refers to the failure to disclose once, in her original motion for sanctions. *See* doc. 27 at 10. Not only did she not cite the matter in her

reply, *see* doc. 34, to Cogent's memorandum in opposition, *see* doc. 29, but neither party cited to or attached as an exhibit the affidavit at issue. Further, the Sixth Circuit's language—which came in a footnote—in the above citation equivocates on the effect of the employee's affidavit, noting that "*it appears*" from the affidavit that Dr. Brown did not reference "competitors" or Cogent's products. *Cogent II*, 712 F.3d at 309 n.3 (emphasis added). Based on this, the Court lacks the information or guidance to render a judgment as to (a) whether Cogent failed to disclose the affidavit at issue, (b) the contents of the affidavit, and (c) whether the affidavit counseled against Cogent bringing and maintaining the instant litigation.

Dr. Brown also alleges that counsel for Cogent used discovery as a means of "acquiring information about [its] competitor[, Hyalogic, rather] than the merits of this lawsuit." Doc. 27 at 11. She points to the fact that Cogent served 117 requests for admission along with its first set of document requests, and that "many" of these 117 requests were not relevant to the issues involved in this case. Doc. 27 at 11. She specifically cites to Cogent's requests that concern Hyalogic and Hyalogic's product "Synthovial Seven":

> 2. Admit that HA is found naturally occurring throughout the human body.
>
> . . . .
>
> 6. Admit that Dietary Supplements are regulated by the Dietary Supplement Health and Education Act.
>
> . . . .
>
> 15. Admit that Hyalogic, LLC uses your data in Hyalogic, LLC's marketing of its products.
>
> 16. Admit that Hyalogic, LLC uses your conclusions in Hyalogic, LLC's marketing of its products.
>
> . . . .
>
> 21. Admit that you tested Synthovial Seven.

22. Admit that Synthovial Seven contains no antimicrobial protective ingredients.

23. Admit that Synthovial Seven is not a sterile product after it has been opened.

24. Admit that you found microbial activity in Synthovial Seven.

25. Admit that you have challenged Synthovial Seven with microbes.

26. Admit that you have never challenged Synthovial Seven with microbes.

. . . .

42. Admit that Size Exclusion Chromatography Multi-angel Laser Light Scattering ("SEC-MALLS") is a more accurate method to calculate the molecular weight of HA than intrinsic viscosity.

. . . .

81. Admit that your data was manipulated to fit Hyalogic, LLC's marketing objective.

. . . .

90. Admit that the source of HA was Chinese.

. . . .

99. Admit that saline is a sterile solution of sodium chloride.

. . . .

102. Admit that for a dietary supplement to be considered "pure HA" it must not contain sodium chloride or other chemicals at a higher concentration than HA.

Doc. 10-1 at 18–51; *see also id.* at 17 ("Request No. 23"—"Please provide any and all documentation regarding Hyalogic, LLC's involvement, participation, or support of your research and testing of the molecular weight of HA.")

To support that the above discovery requests merit sanctions, Cogent cites *Shepard v. Wellman*, 313 F.3d 963 (6th Cir. 2002). According to Dr. Brown, the conduct of Cogent's

counsel amounts to sanction-worthy under *Shepherd*, in that it is "conduct that, from an objective standpoint, falls short of the obligations owed by the member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Id.* at 969.

The Court disagrees. First, opposing counsel's conduct in this case differs materially from that of the attorney at issue in *Shepherd*. There, the attorney "subpoenaed several witnesses, and requested juror questionnaires to investigate allegations of jury tampering in . . . an unrelated case." *Id.* at 966. He also did so "even after the district court advised [him]" to "withdraw his discovery requests" and advised "that he should pursue other means of investigating the alleged jury tampering." *Id.* at 970. Cogent's counsel did not directly disobey the advice of a court in propounding the requests for admission, nor do the requests seem to be for "use in proceedings other than the pending suit." *Id.* at 969. To be sure, some of Cogent's requests appear to have no relation to the case at bar, *see* doc. 10-1 at 23, ¶ 23 ("Admit that Synthovial Seven is not a sterile product after it has been opened."); and others do seem to be aimed at obtaining unrelated information about a competitor, *see id.* at 42, ¶ 90 ("Admit that the source of your HA was Chinese."). But most appear consistent with what seems to be a theory Cogent has advanced since this case's inception: that the chemical make-up of Synthovial Seven, a product made by a company for whom Dr. Brown consults, somehow relates to Cogent's defamation and tortious-interference claims. *See, e.g.*, doc. 3 ¶ 25; doc. 10-1 at 18–51. Even if misguided, this kind of conduct again amounts at worst to "simple inadvertence and negligence," both of which "are not grounds for imposing § 1927 sanctions." *Shepherd*, 313 F.3d at 969.

### 3. The Nature of Cogent's Claims

Dr. Brown finally alleges that Cogent "and its counsel asserted baseless, frivolous claims" indicative of the type of bad faith prohibited by section 1927. Doc. 27 at 1. In order to

prevail on section 1927 grounds for bad faith, Dr. Brown would have to show that Cogent's "attorney knows or reasonably should know that a claim pursued is frivolous." *Shepherd v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2002) (internal quotation marks omitted). Because nothing in the record shows Cogent's attorney subjectively knew that the claim was frivolous, the question becomes whether he should have known as much.

Dr. Brown argues yes. For support, she argues that Cogent never demonstrated a false statement of fact. She also contends that Cogent's discovery responses admitted that Dr. Brown expressed only opinions in the Address, which are not actionable for defamation. *See* doc. 27 at 13–19. Neither is convincing. For the purposes of a defamation claim under Ohio law, "[w]hether a statement constitutes fact or opinion is a question of law to be determined by the court." *Ferreri v. Plain Dealer Publ'g Co.*, 142 Ohio App. 629, 639, 756 N.E.2d 712, 720 (Ohio Ct. App. 2001). To this end, plaintiffs in Ohio may bring defamation claims for statements that might indeed be opinions but were communicated as facts. *See* 142 Ohio App. at 640, 756 N.E.2d at 720. Applied here, for the Court to say that the defamation claim was objectively frivolous on false-statement-of-fact grounds would require an in-the-details analysis that could seemingly go either way. This would in turn require a kind of "*post hoc* reasoning" upon which basing section 1927 sanctions would be unfair. *Kleinmark v. St. Catherine's Care Ctr.*, 585 F. Supp. 2d 961, 965 (N.D. Ohio 2008) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22 (1978)).

Dr. Brown's third point in support presents a more pressing question: whether Dr. Brown's statements were so clearly not "about" Cogent as to render a defamation claim objectively frivolous. *See Devore v. Rolls-Royce Energy Sys., Inc.*, 373 F. Supp. 2d 750, 768 (S.D. Ohio 2005) (noting that a claim for defamation under Ohio law requires that the statement

or statements at issue be "about" the plaintiff).  For context, Dr. Brown said the following in the

Address, which Cogent believed merited a lawsuit:

> Many of the common preservatives that we know about will actually degrade
> HA down to lower molecule weights until it's down to basically glucosamine.
> So, if the process for manufacture of the HA is correct, you can maintain a high
> molecular weight.  But it's very, very difficult to do this.  I've worked with this
> now quite a while and I've got hundreds of graphs on everything I could
> imagine to add to hyaluronic acid and most everything breaks down hyaluronic
> acid which surprised me a great deal.  Because when I was working with the
> inject[a]ble horse material it was in pure form.  We did not want any additives,
> we didn't want any preservatives at all.  And so I didn't realize how sensitive
> hyaluronic acid was at that time.  Then when I started working with the oral
> materials where you don't have the purity, you don't have the sterile
> environment, I started hitting problems and tried to solve those problems.  So if
> you look at just a few of the things I looked at[—]Vitamin C, Ascorbic acid, or
> Calcium Ascorbate, Potassium Sorbate—all of those are very efficient in
> breaking down HA.  This indicates no additives.  This indicates the addition of
> in this case .5% Calcium Ascorbate.  It breaks down in water immediately.  In
> three months it goes from this[,] started at a little less than 1.2 million[,] right
> down to zero in three months.  Citric acid[—].1% citric acid breaks down HA.
> This started at a higher molecular weight but by six months it was almost down
> to zero.  EDTA[,] that's another common one[,] broke it down .15%.  Sodium or
> Potassium Sorbate, two different percentages[,] doesn't matter[,] .1% or .2%
> still broke it down.

Doc. 27-2 at 5–6.

Based on this, and based on Ohio law, the Court declines to sanction Cogent or its

counsel for bringing a claim for defamation.  Admittedly, a defamation claim based on Dr.

Brown's Address is weak: so far as the Court can tell—and the parties cite nothing to the

contrary—nothing in the above statements or in any other part of the Address would even

remotely seem to refer to Cogent or the product it seeks to protect with this lawsuit (Baxyl).

This makes the question of sanctions a close one.  But Cogent's saving grace is that Ohio law

does allow for a defamation claim based on implication, or "innuendo."  *See N.E. Ohio Elite

Gymnastics Training Ctr., Inc. v. Osborne*, 183 Ohio App. 3d 104, 109, 916 N.E.2d 484, 487

(Ohio Ct. App. 2009).  Based on this type of claim, a plaintiff can bring suit for statements that,

based on "inference," might amount to defamatory. *See Kanjuka v. MetroHealth Med. Ctr.*, 151 Ohio App. 3d 183, 192, 783 N.E.2d 920, 928 (Ohio Ct. App. 2002). Although close, it was not objectively frivolous for Cogent to assert that, "through innuendo," Dr. Brown "may have falsely intimated" damaging statements about Cogent or its products. *Id.* Even if not the strongest theory, this aligns exactly with what Cogent alleges in its complaint: "Audience members at Brown's keynote address . . . understood and interpreted Brown's comments . . . to constitute statements about [Cogent's] BAXYL® dietary supplement . . . ." Doc. 3 ¶ 26.

Finally, Cogent's counsel's pursuit of this case does not warrant sanctions under the Court's inherent powers. The Court would have to find that his or his client's "motive for filing the suit was for an improper purpose." *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011). As discussed, Cogent has proceeded in a manner that Dr. Brown might well see as less than desirable. Still, the weight of record does not signal an improper motive in pursuing the case.

## C. Conclusion

Cogent will not be subject to sanctions at this juncture, nor will the Court condition dismissal on Cogent paying Dr. Brown's attorneys' fees and costs. Instead, Cogent itself points to another option that the Court finds appropriate in this case. Just as in *Gliatta v. Tectum, Inc.*, 211 F. Supp. 2d 992, 1012 (S.D. Ohio 2002), Cogent's reasons for dismissal essentially amount to a statement that it "does not wish to pursue [its] claims against [Dr. Brown] at this juncture." Based on the reasons laid out above regarding Cogent's approach to the litigation thus far, and similar to *Gliatta*, the Court conditions the decision to dismiss this action without prejudice on the following: should Cogent re-file its claims against Dr. Brown, it will be liable for any costs and fees that may be unnecessarily incurred, given two filings in this case before this district court.

### III. REMAINING MOTIONS

The resolution of Cogent's motion to dismiss this case without prejudice resolves several other pending motions. Dr. Brown's competing motion to dismiss this case with prejudice is thus denied. *See* doc. 26 at 9. Three additional pending motions are also denied as moot—Dr. Brown's motion to amend her answer to assert two affirmative defenses, doc. 18; Cogent's motion for leave to submit a sur-reply in contesting Dr. Brown's reply motion to amend her answer, doc. 24; and Cogent's motion for a stay of the litigation in this case during the pendency of its motion to dismiss, doc. 25 at 5.

This leaves one final matter—Cogent's cross-motion for sanctions against Dr. Brown and her counsel. Doc. 29. It provides four examples in support. First, Cogent argues that Dr. Brown's conduct during discovery was worthy of sanctions. It specifically argues that Dr. Brown did not need a protective order for the documents it produced; and that Dr. Brown's month-long delay in producing documents after the Magistrate Judge issued the protective order rises to the level of sanction-worthy. *See* doc. 36 at 5. The Court disagrees. Producing documents a month after finalizing a protective order is not a delay worthy of sanctions. Further, Dr. Brown's worry regarding the need for a protective order appears justified in this case given the nature of the information each side sought during discovery (for example, research information and data), and the nature of the relationship between the parties (Cogent as a competitor of the company for whom Dr. Brown consults). As to the documents produced, Cogent alleges that they were available in the public domain and thus not worthy of a protective-order dispute. *See* doc. 29 at 8 (email between counsel). Even if so, Dr. Brown's and her counsel's conduct is not worthy of sanctions under section 1927 and the Court's inherent powers.

Second, Cogent argues that Dr. Brown and her counsel engaged in "sandbagging" during discovery. Doc. 36 at 6. Specifically, Cogent asserts that Dr. Brown refused to respond to questions about her research—questions to which, in Cogent's argument, she clearly knew the answer. Cogent also argues for sanctions for only receiving a day's notice about Hyalogic's counsel attending Dr. Brown's deposition. These arguments lack merit. Again, given the nature of the information at issue in this case, Dr. Brown was justified in her hesitance to respond to many of Cogent's questions about her research. More, while Dr. Brown did equivocate in her answers to some of Cogent's requests for admission, she did so in the context of objecting to the questions. *See, e.g.*, doc. 36 at 6. As Dr. Brown also points out, the Magistrate Judge did not find her conduct in any of these interactions to be noteworthy. *See, e.g.*, doc. 15 (Opinion and Order denying Cogent's motion for leave to propound additional requests for admission). As for Hyalogic's counsel attending a deposition, Dr. Brown could have indeed given more notice. Despite this, the failure to give more notice does not rise to a level worthy of sanctions.

Third, Cogent asserts that it was Dr. Brown who impermissibly sought confidential information from a competitor. The Court agrees with Dr. Brown's rebuttal: "Cogent's defamation claim centers on whether or not Dr. Brown made a false statement about Cogent's product. In order to defend against this claim and argue that Dr. Brown's comments in her Address do not relate to Cogent's product Baxyl, Dr. Brown was entitled to discover information about Baxyl." Doc. 34 at 10.

Fourth, and finally, Cogent argues that Dr. Brown's motion for sanctions is frivolous. The Court disagrees. As noted above, Dr. Brown's motion raised valid concerns.

## IV. CONCLUSION

For the foregoing reasons:

(1) Cogent's motion to dismiss its complaint without prejudice is **GRANTED** subject to the conditions detailed in this Opinion and Order, doc. 25; its concurrent motion to stay the litigation in this case during the pendency of its motion to dismiss is **DENIED as moot**, doc. 25 at 5.

(2) Dr. Brown's motion to amend her answer, doc. 18, as well as her motion for leave to file sur-reply, doc. 24, are **DENIED as moot**.

(3) Dr. Brown's motion to dismiss this case with prejudice is **DENIED**. Doc. 26 at 9.

(4) Finally, the parties' motions for sanctions are also **DENIED**. Doc. 27 (Dr. Brown); doc. 29 (Cogent).

The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

      **IT IS SO ORDERED.**


    11- 20- 2013
**DATED**                                        **EDMUND A. SARGUS, JR.**
                                                **UNITED STATES DISTRICT JUDGE**